LIBERTY TRUST COMPANY, appellant,

*v.*

NELLIE P. FORD et al., respondents.

[Decided October 7th, 1921.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The proofs show that the defendant Haggerty was conducting a sham importing business in the city of Newark, his real purpose being to obtain money from others, ostensibly for investment in his business, or on personal loans on his promise of repayment with interest at a high rate. Complainant is a trust company doing a banking business, with whom Haggerty kept a checking bank account. He induced a bookkeeper in complainant's employ to so manipulate the books of the bank that checks drawn on the bank by Haggerty were honored and paid out of an apparent balance to Haggerty's credit, when in fact he had insufficient funds to meet his checks. The first false bookkeeping entry in Haggerty's account appears under date of July 24th, 1918, and not again until August 14th, 1918, from which latter date to, on or about December 9th, 1918, the false entries occur nearly every day, and by means of the conspiracy between Haggerty and the bookkeeper, the former succeeded in obtaining on his overdrafts a total of nearly $53,000 of the bank's funds. The falsification of Haggerty's account was accidentally discovered by one of the bank officials on December 9th, 1918, and Haggerty was arrested the following day. A petition in bankruptcy was filed against Haggerty on December 20th, 1918, and he was duly adjudged a bankrupt and a trustee in bankruptcy was appointed. The total amount realized on his assets was about $9,500, and upward of $150,000 in claims have been filed with his trustee.

"The defendant Frank Ford entered Haggerty's employ April 15th, 1916, and remained with him until the time of his arrest. The defendant Nellie P. Ford is the mother of Frank Ford. Through her son's advice, and upon inducements held out by Haggerty, she made various loans to Haggerty on his promissory notes and received from him payments for interest at a rate as high as thirty per cent. per annum and also payments on account of principal.

"This suit involves two checks drawn by Haggerty on complainant, to the order of Nellie P. Ford, given as payments on account of Mrs. Ford's loans to Haggerty, one for $2,000, dated October 7th, 1918, and the other for $5,000 [which was certified by complainant at the payee's request], dated December 3d, 1918, both of which were duly paid by complainant. It also involves a check drawn by Haggerty on complainant to the order of Frank Ford for $1,000, dated November 19th, 1918, which bears the payee's endorsement only and was cashed by complainant for him. It is claimed by complainant that the $1,000 check was a payment on account of a loan made by Frank Ford to Haggerty, but Ford insists that it was given and received on account of salary due him.

"Complainant seeks to have the money received by said two defendants on said checks impressed with a trust in its favor, upon the theory that the checks were not received by the defendants as *bona fide* holders for value, and that they were not effectual to pass title to defendants of money stolen by Haggerty from complainant. In the event that the defendants should not be required to account for such money directly to complainant, the complainant and the trustee in bankruptcy contend that at the time of such payments Haggerty was insolvent and that the defendants had reasonable cause to believe he was insolvent and that they were being preferred and because the payments to said defendants were made within four months before the filing of the petition in bankruptcy, they must be repaid to the trustee. Complainant then insists that a trust on such funds should be declared in its favor, for the reason that the bankrupt's estate should not be permitted to profit by the crime of the bankrupt.

"There seems to be no doubt that Haggerty was insolvent at the time he made the payments in question, but my conclusion from the evidence is that the defendants were not aware of his insolvency and had no reasonable cause to believe that they were being preferred as creditors, and, therefore, the payments made them are not voidable under the Federal Bankruptcy act. I am also satisfied that neither defendant had reason to believe that Haggerty's bank account was being falsified and that Haggerty's checks on complainant to their order were paid with money Haggerty was stealing from complainant. Haggerty's checks came to the defendants on account of money due on Haggerty's notes which evidenced his indebtedness to them, or, in the case of Frank Ford, for salary. On receiving these checks the defendants became *bona fide* holders for value. *Comp. Stat. p. 3738 § 25.* As the holders of these checks the payees had no legal right to exact payment on them from complainant, because they did not constitute a contract between complainant and the payees and complainant had the right to determine whether to pay them or not and whether to certify the $5,000 check to the order of Nellie P. Ford or not. *Comp. Stat. p. 3756 § 189; Creveling* v. *Bloomsbury National Bank, 46 N. J. Law 255; National Bank of New Jersey* v. *Berrall, 70 N. J. Law 757.* The certification of the $5,000 check was in effect payment thereof by complainant. *Comp. Stat. p. 3756 §§ 188, 189; Fidelity Trust Co.* v. *Baker, 60 N. J. Eq. 170; Automobile Co.* v. *Bank, 77 N. J. Law 649; State* v. *Scarlett, 91 N. J. Law 200.* In making its election whether to pay or not, complainant was bound to know the state of its account with Haggerty. The fact that his account appeared to be good when actually it was not is immaterial. Complainant placed its bookkeeper in a position where he had the opportunity to falsify the account and it must be held accountable for his acts as against innocent third parties who presented checks received by them in the ordinary course of business. Having exercised its option to pay or not to pay by honoring the checks, complainant cannot recover the money back from the payees. This is under the general rule that payment of a check by a bank upon which it is drawn, under the mistaken belief that the maker of the check had sufficient funds to his credit to pay

the check, is a finality, and the bank cannot recover from the payee of the check the amount so paid. One of three reasons, and sometimes all three reasons, have been assigned for the rule —*first,* because there is no privity between the payee and the bank; *second,* because the bank always has the means of knowing the state of the depositor's account by an examination of its books, and, therefore, the payment is not a mistake within the meaning of the general rule which permits the recovery of money paid under a mistake of fact, and *third,* because to permit the bank to repudiate the payment, would destroy the certainty that must pertain to commercial transactions of this sort and give way to the uncertainty, delay and annoyance which would result if the bank could at some future time call on the payee for the return of money paid him on a check. *National Bank of New Jersey* v. *Berrall, supra; 23 L. R. A. (N. S.) 1092; 33 L. R. A. (N. S.) 1023.* So, it has been held that the certification of a check by a bank upon the mistaken belief that the drawer had sufficient funds to his credit, when in fact the apparent credit was the result of the deposit of a forged check to the credit of the drawer's account, will not excuse the bank from paying the certified check (*Fidelity Trust Co.* v. *Baker, supra*), and it has also been held that where a bank official having authority to certify checks, certified one for an amount which he knew to be in excess of the drawer's account, the effect of the certification is payment, precisely as if the bank had paid the money on it instead of making a certificate of its being good and the bank is estopped from denying that it has sufficient funds with which to pay the check. *State* v. *Scarlett, supra; 2 A. L. R. 86.* And it is the rule that a person receiving stolen money in due course of business, in payment of a pre-existing debt, is a holder for value as against the former owner. *Fidelity Trust Co.* v. *Baker, 60 N. J. Eq. 170, 173; 25 L. R. A. (N. S.) 631; L. R. A. 1917 A, 704, 707.*

"Both checks given by Haggerty to the defendant Nellie P. Ford were deposited by her in her bank under a general endorsement and were paid by complainant to her bank. It might be argued that when Mrs. Ford deposited the checks in her bank the amount thereof was credited to her; that the money so credited

was the money of her bank; that the transaction was in effect a sale of negotiable paper by Mrs. Ford to her bank; that the money complainant afterward paid was paid to Mrs. Ford's bank and not to her, and that the right to recover money paid by mistake exists only as against the party to whom the payment was made. But this question of privity between the parties to this action was not raised and has not been considered.

"I shall advise a decree that complainant's bill be dismissed."

*Messrs. McCarter & English,* for the appellant.

*Messrs. Lintott, Kahrs & Young* and *Mr. David Bobker,* for the respondents.

Per Curiam.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—The Chief-Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Katzenbach, Van Buskirk—10.

*For reversal*—None.